IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JUDD E. UHL,

        Plaintiff,

v.                                           CIVIL ACTION NO. 3:08-0064

CSX TRANSPORTATION, INC.,
a corporation,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant's Motions in Limine to Exclude Testimony or Evidence Regarding Improper Ballast (doc. 45) and Strawberry Farm Crossing as an Alternative Boarding Location (doc. 47). For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motions in Limine to Exclude Testimony or Evidence Regarding Improper Ballast and **DENIES** Defendant's Motion in Limine to Exclude Testimony or Evidence Regarding Strawberry Farm Crossing as an Alternative Boarding Location.

**I. FACTS**

Plaintiff Judd E. Uhl was employed as a conductor for Defendant CSX Transportation, Inc., an owner and operator of various railroad tracks and yards as a common carrier in interstate commerce. Plaintiff alleges that on or about June 12, 2005, he was working for Defendant at the AEP Plant near Waterford, Ohio, when he attempted to board one of Defendant's locomotives, which required him to step up from the ballast below the locomotive. Plaintiff contends that

Defendant negligently permitted coal to accumulate on and cover the ballast comprising the track bed, or at least the sloping side of the track bed. When Plaintiff attempted to board the locomotive, his foot "rolled" on the coal, causing him to fall and injure his finger.

## II. DISCUSSION

### A. Improper Ballast

Defendant argues that "Plaintiff should be prohibited from making claims concerning the railroad ballast since all such claims are preempted by the Federal Railroad Safety Act (FRSA) and its accompanying regulations." *Defendant's Motions in Limine to Exclude Testimony or Evidence Regarding Improper Ballast*, at p. 1. As the Court understands Plaintiff's theory of liability, Plaintiff does not contend that the ballast itself was improper or defective, but rather that Defendant negligently allowed coal to accumulate on top of the ballast, causing Plaintiff to slip and fall. In light of this concession, the Court **GRANTS in part** Defendant's motion insofar as it seeks to bar Plaintiff from presenting evidence or testimony that the ballast itself was improper or defective.

In its reply, Defendant attempts to broaden the scope of its motion and asks that the Court also prohibit Plaintiff from introducing testimony or evidence regarding the accumulation of coal on the ballast because "Plaintiff's argument [regarding coal accumulation] is still based on improper railroad ballast conditions and such claims are preempted by the FRA's [Federal Railroad Administration's] regulations issued under the FRSA." *Defendant's Reply*, at p. 1. Defendant's reply effectively repeats the four bases for excluding testimony or evidence of improper ballast discussed in its initial motion. Because the Court finds Defendant's bases for exclusion inapplicable to Plaintiff's theory of liability regarding coal accumulation, the Court **DENIES in part** Defendant's

motion insofar as it seeks to bar Plaintiff from presenting evidence or testimony that Defendant negligently permitted coal to accumulate on top of the ballast. The Court discusses Defendant's arguments below.

**1. National Uniformity in Railroad Safety**

Defendant first argues that permitting Plaintiff to offer evidence or testimony of coal accumulation on the ballast would contravene the FRSA's stated purpose of ensuring that "[l]aws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). According to Defendant, "unless a state regulation is saved by one of the three saving conditions enumerated in [49 U.S.C. § 20106(a)(2)], federal regulations covering the subject matter of the state regulation is preempted."[1] *Defendant's Motions in Limine to Exclude Testimony or Evidence Regarding Improper Ballast*, at p. 2. Section 20106(a)(2) provides:

> A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order–
> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
> (B) is not incompatible with a law, regulation, or order of the United States Government; and
> (C) does not unreasonably burden interstate commerce.

Defendant also cites two cases in which courts, including the United States Supreme Court, have upheld dismissals of common law negligence or Federal Employer Liability Act (FELA) claims based on excessive speed of locomotives, because the speed at which the locomotive was traveling

---

[1] In fact, all three of the conditions of Section 20106(a)(2) must be met if the state regulation is to escape preemption.

at the time of the accident was within the maximum limit set by 49 C.F.R. § 213.9. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993); *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773 (7th Cir. 2000).

However, neither the cited statute nor the cases are on point. Plaintiff's FELA claim does not seek to enforce "an additional or more stringent law, regulation, or order." 49 U.S.C. § 20106(a)(2). The FRSA does not impose a generalized duty on railroads to refrain from negligently causing injury to its employees. This separate and distinct duty comes from FELA. This case is not one in which the plaintiff seeks to impose a greater, stricter duty on railroads than that which exists under the FRSA.

A brief consideration of Defendant's cited cases highlights this point. In both *Easterwood* and *Waymire*, the plaintiff claimed that the railroad's negligent operation of its train at an excessive rate of speed caused or contributed to the cause of the accident that harmed the plaintiff or, in the case of *Easterwood*, the decedent. 507 U.S. at 661; 218 F.3d at 774. In both cases, however, at the time of the accident, the train was traveling well within the speed limit set by 49 C.F.R. § 213.9(a), which governs "maximum allowable operating speed[s]" for freight and passenger trains traveling on tracks of a given class. The Supreme Court found in *Easterwood*, and the Seventh Circuit Court of Appeals found in *Waymire*, that Section 213.9(a) preempted the plaintiff's claim.[2] In neither case was the plaintiff permitted to enforce "an additional or more stringent law [or] regulation" via his or her allegations of negligence. 49 U.S.C. § 20106(a)(2).

---

[2]The Court is aware that Plaintiff argues *Waymire* was wrongly decided because it involved a FELA claim, which Plaintiff argues is not subject to preemption by railroad regulations, like the common law negligence claim in *Easterwood*. In light of the Court's finding that *Waymire* is inapplicable, the Court expresses no opinion as to whether that case was correctly decided.

This case involves no such effort on the part of Plaintiff. Defendant's attempt to analogize *Easterwood* and *Waymire* to the present case fails because this case contains no counterpart to Section 213.9(a). Here, there is no federal "law, regulation, or order" covering accumulation of debris or foreign substances on railway ballast to which Plaintiff's FELA claim can serve as "an additional or more stringent law, regulation, or order." 49 U.S.C. § 20106(a)(2). Accordingly, Defendant's argument must fail.

**2. Ballast Standards**

In a similar argument, Defendant contends that 49 C.F.R. § 213.103 alone governs ballast standards, and because Plaintiff has not claimed that Defendant did not comply with Section 213.103, he cannot claim a higher standard exists under FELA. Section 213.103 provides:

> Unless it is otherwise structurally supported, all track shall be supported by material which will–
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
> (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad equipment and thermal stress exerted by the rails;
> (c) Provide adequate drainage for the truck; and
> (d) Maintain proper track crosslevel, surface, and alinement.

Again, Defendant's argument misses the mark. Plaintiff does not allege noncompliance with Section 213.103, or any other regulation for that matter. Instead, he alleges that Defendant negligently permitted coal to accumulate in his work area, which, in this instance, happened to be immediately alongside the track on top of the supporting ballast. Defendant's apparent compliance with Section 231.103 has no bearing on whether it was negligent if it indeed allowed coal to accumulate on the ballast. Under the facts at hand, Section 231.103 is simply inapplicable.

This fact likewise renders inapplicable *Nickels v. Grand Trunk Western Railroad*, 560 F.3d 426 (6th Cir. 2009), relied on by Defendant for the proposition that Section 231.103 "preempts common law claims for injuries resulting from walking on ballast."[3] *Plaintiff's Response*, at p. 5. In *Nickels*, "the gist of [the plaintiffs'] claims [was] that the railroads used large mainline ballast in areas where smaller yard ballast would have sufficed–such as passing sidings, switch leads, and interior yard tracks." *Id.* at 431. Looking at Section 231.103, the court observed:

> The regulation, however, makes no distinction between mainline and secondary track; it provides that "*all* track shall be supported by material" able to transmit and distribute track and equipment loads, restrain the track under dynamic loads and thermal stress, provide adequate damage, and maintain proper track crosslevel, surface and alinement. [§ 231.103 (emphasis added by the court).] Rather than prescribing ballast sizes for certain types or classes of track, the regulation leaves the matter to the railroads' discretion so long as the ballast performs the enumerated support functions. In this way, the regulation substantially subsumes the issue of ballast size.

*Id.*

Unlike the claims of the plaintiffs in *Nickels*, Plaintiff's claim in this case does not touch Section 231.103. At its core, Plaintiff's claim is that Defendant negligently permitted a foreign substance to accumulate in his work area. In this instance, the foreign substance was coal and the work area was the side of the trackbed, which is comprised of ballast. However, the type of ballast used by Defendant at this location appears to have nothing to do with Plaintiff's claim. Whether the ballast was large or small, of one type or another, Plaintiff's claim is that the accumulation of coal on top of the ballast shifted when he attempted to board the locomotive, causing his foot to "roll"

---

[3]Because *Nickels* is factually distinguishable, the Court makes no determination as to whether the Sixth Circuit Court of Appeals's finding that the plaintiff's common law negligence claim was preempted in that case provides any guidance as to whether Plaintiff's FELA negligence claim would be preempted in this case.

and leading him to fall and jam his finger. While Section 231.103 may "substantially subsume[] the issue of ballast size," it does not subsume the issue of negligent accumulation of a foreign substance on top of the ballast. *Cf. Brown v. W. Ry. of Ala.*, 338 U.S. 294, 297 (1949) (in a case predating the FRSA, finding that the plaintiff railroad employee had made out a cause of action under FELA when he alleged that he was injured when he tripped over "'clinkers' and other debris" that the railroad had negligently allowed to accumulate alongside the track where he was working).

### 3. Trackside Walkways

Third, Defendant argues that "[t]o this day, the FRA has declined to issue regulations regarding trackside walkways." *Defendant's Motions in Limine to Exclude Testimony or Evidence Regarding Improper Ballast*, at p. 4. In Defendant's view, because the FRA clearly has jurisdiction to issue such regulations, 43 Fed. Reg. 10583, 10587 (Mar. 14, 1978), but continues to decline to do so, 62 Fed. Reg. 36138, 36144 (July 3, 1997), Plaintiff cannot maintain his claim that Defendant negligently permitted coal to accumulate on the ballast that formed the track bed immediately alongside the track. In support of this belief, Defendant cites a few cases in which courts have found attempted state regulation of trackside walkways preempted by the FRSA.[4] *See Mo. Pac. R.R. Co. v. R.R. Comm'n of Tex.*, 948 F.2d 179 (5th Cir. 1991); *Norfolk & W. Ry. Co. v. Burns*, 587 F. Supp. 161 (E.D. Mich. 1984); *Black v. Seaboard Sys. R.R.*, 487 N.E.2d 468 (Ind. Ct. App. 1986); *Black v. Balt. & Ohio R.R.*, 398 N.E.2d 1361 (Ind. Ct. App. 1980).

---

[4]The Court notes that the present case does not pose any issues regarding state regulation. Rather, Plaintiff's claim arises under FELA. As the Court discusses, Defendant's cited cases are distinguishable from the case at hand, aside from the fact that they involved state regulation and this case does not. Thus, the Court need not speculate as to what guidance, if any, these cases would otherwise provide regarding how to treat Plaintiff's FELA claim.

There is at least one critical distinction to be made between the cases cited by Defendant and the case at hand. Here, Plaintiff allegedly slipped on coal covering the ballast that makes up the sloping side of the track bed. He does not allege that he slipped on a trackside walkway, or even that one was present. Thus, this case does not present any attempted regulation of a trackside walkway. Defendant's cited cases are simply off point.

### 4. Negative Preemption

Lastly, Defendant urges the Court to find that the FRA's refusal to require or regulate trackside walkways leaves Plaintiff's claim "'negatively preempted because the FRA has 'covered' the subject matter.'" *Defendant's Motions in Limine to Exclude Testimony or Evidence Regarding Improper Ballast*, at p. 8 (quoting *Norfolk & W. Ry. Co. v. Pub. Utils. Comm'n of Ohio*, 926 F.2d 567 (6th Cir. 1991)). This argument fails for the same basic reason as Plaintiff's previous argument. Whether the FRA's decision not to regulate trackside walkways would leave Plaintiff's FELA claim negatively preempted or not, assuming the claim dealt with trackside walkways, is of no significance. Plaintiff's actual claim is that he slipped on the side of the track bed. It is not even clear that there was a trackside walkway next to this portion of the track bed. Defendant's negative preemption argument, like his foregoing arguments, does not address the alleged facts of this case. Accordingly, it, too, should be rejected.

### B. Strawberry Farm Crossing as Alternative Boarding Location

Defendant also seeks to exclude testimony or evidence regarding whether it could or should have provided an alternative boarding location. In particular, Defendant anticipates that Plaintiff

will offer testimony or evidence that it was easier to board locomotives at the Strawberry Farm Crossing location. However, Defendant argues that this testimony should be excluded as irrelevant. According to Defendant, "[t]he only relevant inquiry is whether the boarding location (where Plaintiff attempted to board when he allegedly injured his finger) was reasonably safe." *Defendant's Motions in Limine to Exclude Testimony or Evidence Regarding Strawberry Farm Crossing as an Alternative Boarding Location*, at p. 2. In support of its position, Defendant cites *Stillman v. Norfolk & Western Railroad Co.*, 811 F.2d 834 (4th Cir. 1987).

In *Stillman*, the plaintiff, a railroad employee was injured during the installation of a gear in a railroad car. Installation of a gear involved hanging it with a chain from the blades of a forklift. The forklift then lifted the heavy gear and placed it in the railroad car. While one such gear was suspended from the blades of a forklift, the forklift ceased to operate, apparently unexpectedly, and its blades would not move up or down. Placing himself partially under the blades of the forklift, the plaintiff grabbed the chain and attempted to dislodge it from the forklift blades. At that point, the blades suddenly lowered, injuring him. The plaintiff then sued the railroad under FELA.

At trial, the plaintiff "sought to testify that there was an alternative way to install gears in railroad cars using overhead cranes that would have been safer than the [r]ailroad's practice of using forklifts." *Id.* at 838. The railroad objected, although not before the plaintiff had "presented essentially all of the testimony on this point that was contained in his later offer of proof." *Id.* The trial court sustained the objection, stating "the relevant inquiry was whether the [r]ailroad had exercised reasonable care, not whether the procedures used by [it] could have been made safer." *Id.* On appeal, the Fourth Circuit Court of Appeals agreed with the lower court's statement of the issue and affirmed the decision to sustain the objection. It found:

> As the district court correctly observed, the question the jury had to decide was whether the [r]ailroad had exercised reasonable care for the safety of [the plaintiff], not whether the [r]ailroad could have employed a safer method for installing gears. In any event, [the plaintiff] introduced essentially all of the testimony concerning the alternative gear installation method that he wished to offer. In view of the fact that the district court never instructed the jury to disregard this testimony, we must conclude that any error the district court may have committed in sustaining the [r]ailroad's objection to [the plaintiff's] proffered testimony was harmless.

*Id.*

In opposition, Plaintiff cites *Stone v. New York, Chicago, & St. Louis Railroad Co.*, 344 U.S. 407 (1953). In *Stone*, the plaintiff, also a railroad employee, was injured while removing old or worn rail ties. This process entailed "jack[ing] up" the rail, pulling the spikes that held the rails, removing the plates, and finally pulling the tie. *Id.* at 408. Two men could usually pull the tie using tongs. However, if old spikes protruded from the tie into the ground, three to four men were generally needed.

The plaintiff and a fellow employee, alone, attempted to remove a tie with tongs; however, unbeknownst to them, the tie had spikes protruding from it and into the ground, and they were unable to remove it. As the men pulled, their superior told the plaintiff that he was not pulling hard enough. The superior then placed a bar under the far end of the tie. The plaintiff and the other man continued to pull, but to no avail. The plaintiff's superior then told him to pull harder, to which he responded that he was pulling as hard as he could. The superior threatened that he would get someone else to pull harder, if the plaintiff could not. At that time, the plaintiff gave another hard pull, injuring his back in the process. Ultimately, four men were required to remove the tie: two pulling, another prying with a crowbar, and yet another hammering with a maul.

In addition to the use of tongs, there were three other ways to remove a stuck tie. First, a trench could be dug next to the tie, and then the tie rolled into the trench. Second, the rail could be jacked up until the tie became dislodged, although this method had the disadvantage of producing a hump in the track. Third, the rail could be freed from the ties by the length of half of a rail on each side of the tie, and then jacked up, "freeing the tie sufficiently so that it could easily be removed." *Id.* This method required putting up a flag and stopping all approaching trains.

The plaintiff sued the railroad for his injury in state court. Although he received a verdict in his favor, the state supreme court reversed, finding that the "plaintiff had not made out a submissible case either as to negligence or as to causation." *Id.* at 407. The United States Supreme Court reversed. It stated that "the case was peculiarly one for the jury. The standard of liability is negligence. The question is what a reasonable and prudent person would have done under the circumstances." *Id.* The Court noted that there were three other available methods, that the plaintiff's superior could have placed additional men on the tongs, and that "[t]he likelihood of injury to men pulling or lifting beyond their capacity is obvious." *Id.* at 409. The Court defined the issue as "[w]hether the [superior] in light of the risks should have used another or different method to remove the tie or [whether] failing to do so was culpable." *Id.* The Court concluded that consideration of this issue in light of the circumstances described above, including the availability of alternative methods, was appropriately left for the jury:

> The experience with stubborn ties, the alternative ways of removing them, the warning by [the plaintiff] that he had been pulling as hard as he could, the command of his superior to pull harder, the fact that more than two men were usually used in these circumstances–all these facts comprise the situation to be appraised in determining whether [the railroad] was negligent. Those circumstances were for the trier of fact to appraise.

*Id.*

This Court believes that the reliance of Defendant on *Stillman*, while ignoring *Stone*, overlooks a key difference between these cases. In *Stillman*, there was no evidence introduced that use of the forklift was not a reasonably safe method of performing the task at hand. To the contrary, the *Stillman* court merely stated that "the forklift quit operating and would not move up or down." 811 F.2d at 836. Thus, the failure of the forklift appears to have been an isolated incident and, in any event, was wholly unlike the situation in *Stone*. In that case, a supervisor threatened an employee to pull harder on a stuck rail tie, despite the fact that the employee had told him he could pull no harder; additional employees could have been assigned to assist the employee; and there were three other methods available for removing a stuck tie. The Court determined that "all these facts comprise the situation to be appraised in determining whether [the railroad] was negligent," and that the jury should therefore be permitted to consider them all, including evidence of the alternative methods. *Stone*, 344 U.S. at 409; *see Edsall v. CSX Transp.*, No. 1:06-CV-389, 2007 WL 4608788, at *4 (N.D. Ind. Dec. 28, 2007) ("[T]he issue of what is reasonably safe cannot be viewed in a factual vacuum. . . . Stated a bit more globally [than in *Stone*], evidence of alternative methods can be helpful in determining whether a reasonable and prudent railroad would have required use of the method that injured its employee."); *Williams v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 00-C-2250, 2002 U.S. Dist. LEXIS 11908, at *26-27. (N.D. Ill. June 28, 2002) ("*Stone* requires that the trier of fact determine whether the method was reasonable. 344 U.S. at 409. Only when it is determined that the railroad exercised reasonable care is testimony regarding safer alternatives properly excluded. *Stillman v. Norfolk & W. R. Co.*, 811 F.2d 834, 838.").

In this case, Plaintiff represents that he will introduce evidence that requiring him to board locomotives at the location where his alleged injury occurred constituted an unreasonably safe method of carrying out that task. Plaintiff intends to demonstrate that Defendant negligently permitted the ballast at that location to become covered in coal, and that requiring him to step up from the ground to board the locomotive also contributed to the unsafeness of the boarding location. While the alleged negligence here may not be as great as that in *Stone*, that case is nonetheless controlling. Unlike in *Stillman*, this case involves a dispute as to whether the railroad exercised reasonable care. In light of this question, the jury should be given the benefit of considering alternative boarding locations to aid it arriving at an answer.

### III. CONCLUSION

Pending before the Court are Defendant's Motions in Limine to Exclude Testimony or Evidence Regarding Improper Ballast (doc. 45) and Strawberry Farm Crossing as an Alternative Boarding Location (doc. 47). For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motions in Limine to Exclude Testimony or Evidence Regarding Improper Ballast and **DENIES** Defendant's Motion in Limine to Exclude Testimony or Evidence Regarding Strawberry Farm Crossing as an Alternative Boarding Location.

The Court **DIRECTS** the Clerk to send a copy of this written Order and Opinion to counsel of record and any unrepresented parties.

        ENTER: June 17, 2009

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE